UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

FIMCO SERVICES, LLC, *et al.*,     )
                           )
     *Plaintiff*s,             )
                           )     Case No. 1:10-cv-72
v.                       )
                           )     Judge Mattice
FIRSTMERIT BANK, N.A.,     )
                           )
     *Defendant*.          )

## MEMORANDUM AND ORDER

Presently before the Court is Defendant FirstMerit Bank N.A.'s Motion to Transfer Venue [Court Doc. 4]. Plaintiffs filed their response to the Motion to Transfer Venue [Court Doc. 13] on May 10, 2010, and Defendant filed its Reply [Court Doc. 14] on May 17, 2010. For the reasons explained below, Defendant's Motion to Transfer Venue [Court Doc. 4] will be **DENIED**.

## I.    STANDARD OF REVIEW

Defendant requests transfer of venue pursuant to 28 U.S.C. §1404(a) because, it claims, "the governing contracts between the parties contain valid and enforceable forum selection clauses that require this action to be brought in the courts of Stark County, Ohio." (Court Doc. 4, Def.'s Mot. to Transfer Venue, 1.) Transfer of venue under 28 U.S.C. § 1404(a) requires a two-part analysis. First, the movant must identify an alternative forum in which venue is proper. *See id*. Next, the movant must show that the convenience of the parties and witnesses, and the interests of justice, warrant transfer. *See id*.; *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).

In *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 539 (6th Cir. 2002), the United

States Court of Appeals for the Sixth Circuit applied the Supreme Court's reasoning in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), to hold that "§ 1404(a) is broad enough to control the issue of whether this forum-selection clause should be given effect." In *Kerobo*, however, the Court noted that a forum selection clause does not "dictate" the forum, but rather is one of the case-specific factors to consider in the overall calculus dictated by §1404(a), including " the convenience of parties and witnesses, public-interest factors of systemic integrity, and private concerns falling under the heading the interest of justice," *Id.* at 536, 537 (citing *Ricoh*, 487 U.S. at 30) (internal citations and quotation marks omitted). Therefore, a forum selection clause "should receive neither dispositive consideration ... nor no consideration ... but rather the consideration for which Congress provided in § 1404(a)." *Id.* at 537-38 (citing *Ricoh*, 487 U.S. at 31) (internal citations and quotation marks omitted). Finally, the Court's discretion in balancing these "case-specific factors" is very broad. *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) ("As the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate.")

II.     **FACTUAL BACKGROUND**

Plaintiff FIMCO Services, LLC (hereinafter "Fimco") is a limited liability company with its principal place of business in Dayton, Tennessee. (Court Doc. 1, Def.'s Notice of Removal, 2.) Plaintiffs Randall and Jennifer Parr are married to each other and residents of Tennessee, and Randall Parr asserts he was the managing member of FIMCO Services, LLC. (Court Doc. 1-1, Compl., ¶ 2.) Defendant FirstMerit Bank, N.A. is a national bank with

its principal place of business in Akron, Ohio (Court Doc. 1, Def.'s Notice of Removal, 2), and Plaintiffs allege that Defendant provided banking services to Plaintiffs in Tennessee. (Court Doc. 1-1, Compl., ¶ 3.)

In the Affidavit of Eric E. Hull, Defendant describes in detail, and supports with copies of the relevant documents, the series of transactions giving rise to the relationship between the parties, and it appears from the filings that the parties are largely in agreement as to the basic history of their previous dealings.

In 2003, Randall Parr and Larry Groves[1] formed Fimco to purchase the business and assume the debt of Factory Industrial Maintenance Company, Inc. (Court Doc. 4-1, Hull Aff., ¶ 2; Court Doc. 1-1, Compl., ¶ 5.) To finance the acquisition of this company and its assets, Plaintiff Fimco entered into two separate business loan agreements with Defendant. (Court Doc. 4-1, Hull Aff., ¶¶ 3,8; Court Doc. 1-1, Compl., ¶ 6.)

For the first transaction (the "2003 loan"), Defendant and Plaintiffs signed a business loan agreement in which the Defendant promised to lend Fimco $420,000.00. (Court Doc. 4-1, Hull Aff., Ex. 1.) This agreement listed Randall Parr as the guarantor and was signed by Randall and Jennifer Parr, each of which were identified as "Member of FIMCO Services, LLC." (*Id.*) To evidence this loan, Fimco, by Randall and Jennifer Parr, executed a promissory note, No. 21077-12121 (Court Doc. 4-1, Hull Aff., Ex. 2; Court Doc. 1-1, Compl., ¶ 6). To secure the promissory note, Plaintiff Fimco, again by Plaintiffs Randall and Jennifer Parr, and Defendant executed a commercial security agreement hypothecating "all inventory, equipment and general intangibles" and a "1997 Chevrolet

---

[1] Mr. Groves's role in these transactions is unclear, but he is not a party to this action currently.

GC2," identified by VIN. (Court Doc. 4-1, Hull Aff., Ex. 3; Court Doc. 1-1, Compl., ¶ 6.) Each of these documents – the loan agreement, the promissory note, and the security agreement – was dated June 20, 2003.

Plaintiff Fimco then sought to purchase the Ohio property on which it operated its business and which it had been leasing. (Court Doc. 4-1, Hull Aff., ¶ 7.) For the second transaction (the "2004 loan"), Plaintiff Fimco and Defendant again entered into an agreement in which Defendant agreed to loan Plaintiff Fimco $217,889.50.[2] (Court Doc. 4-1, Hull Aff., ¶ 8; Court Doc. 1-1, Compl., ¶ 6.) To evidence this loan, Plaintiff Fimco by Plaintiff Randall Parr, and Plaintiff Randall Parr individually executed a promissory note, No. 21077-13839. (Court Doc. 4-1, Hull Aff., Ex. 6; Court Doc. 1-1, Compl., ¶ 6). To secure the promissory note, Plaintiff Fimco, by Plaintiff Randall Parr, executed an assignment of rents and an open-end mortgage relating to the Ohio property. (Court Doc. 4-1, Hull Aff., Exs. 7, 8.) Both the assignment of rents and the open-end mortgage contained a notice that "This instrument was prepared by FirstMerit Bank N.A." and a notarized Limited Liability Company Acknowledgment, which was executed in Stark County, Ohio and certified that Randall Parr had appeared in person before the notary. (*Id.*) Finally, each of these documents – the promissory note, the assignment of rents, and the open-end mortgage – was dated October 26, 2004.

The 2003 loan was set to mature in May 2006 and the 2004 loan was set to mature in October 2007. (Court Doc. 4-1, Hull Aff., ¶ 6; Court Doc. 1-1, Compl., ¶ 7). The parties

---

[2] Because neither party has provided a copy of this loan agreement, if there is one, the Court makes no assumption about the terms that would be present in or control this agreement and instead looks solely to the 2004 promissory note, assignment of rents, and open-ended mortgage.

amended the 2003 promissory note twice, first on August 24, 2006 to extend the maturity date of the note to October 31, 2006, and then on November 15, 2006 to extend the maturity date of the note to May 31, 2007. (Court Doc. 4-1, Hull Aff., Exs. 4, 5; Court Doc. 1-1, Compl., ¶ 7.)[3]

As the 2003 loan's new maturity date of May 31, 2007 approached, Plaintiffs entered into discussions with Defendant, specifically FirstMerit Assistant Vice President Eric Hull and Vice President Robert Folk, about either "renewing the loan or otherwise entering into another loan agreement." (Court Doc. 1-1, Compl., ¶ 7.) Plaintiffs allege that on several occasions either or both of these individuals made specific representations that either the outstanding loan would be renewed or the parties would enter into a new loan agreement. (*Id.* at ¶¶ 8-9.) Plaintiffs further allege that Defendant's employees' misstatements and misrepresentations led Plaintiffs to believe that they were to make no more payments on the 2003 loan until the renewal was completed or the parties entered into the new agreement. (*Id.* at ¶ 8.) Plaintiffs allege that they had entered into discussions with Cornerstone Bank, located in Chattanooga, Tennessee, about obtaining new loans to satisfy their obligations to Defendant but that, in reliance on Defendant's promises and representations, they discontinued those discussions. (*Id.* at ¶ 10.)

Plaintiffs next allege that in September 2007, instead of receiving either a new loan agreement or another amendment to the 2003 promissory note, they received a written

---

[3] At this point in the history of this action, any agreement as to the underlying facts or theory of the case ends. Plaintiffs' next paragraphs in their Complaint relate to the circumstances surrounding the alleged discussions concerning to the 2003 Promissory Note, but Defendant largely fails to address these contentions – or, more importantly for the purposes of this motion, their effect on the claims at issue in this case – except to argue that because the discussions related to possibly amending the 2003 Promissory Note, all claims arising therefrom are controlled by the forum selection clause. Therefore, the balance of the background of this case is derived from allegations in Plaintiff's complaint.

communication from Robert Folk that "vitiated and/or repudiated the previous agreement between the parties and indicated to the Plaintiffs that the bank's representatives had engaged in a pattern of misrepresentations to them." (*Id.* at ¶ 11.) Specially, the communication advised Plaintiffs that the 2003 loan was in default, an event which triggered the default of the 2004 loan. (*Id.*) Plaintiffs allege that they were only in default on these obligations because they relied on Defendant's misrepresentations in stopping payment on the loan while awaiting the renewal or new loan to be processed. (*Id.*) Finally, after Plaintiffs were already in default on these obligations, Defendant offered to make new loans to Plaintiffs, but on "much more expensive and totally different terms." (*Id.* at ¶ 12). Plaintiffs then returned to Cornerstone Bank and received new financing satisfying their obligations to Defendant, but they allege that the financing they obtained was "at much more expensive and less advantageous terms which could have been had by the Plaintiffs before the Defendant's promises and misrepresentations." (*Id.*)

Plaintiffs filed the instant action in the Circuit Court of Rhea County, Tennessee on March 5, 2010. (Court Doc. 1-1, Compl.)  In it, Plaintiffs allege that Defendant: (1) is guilty of fraudulent/negligent misrepresentation; (2) is guilty of promissory fraud; (3) breached its [oral] agreement to renew the outstanding loans on the same terms; (4) violated its duty of good faith and fair dealing; and (5) violated the Tennessee Consumer Protection Act insofar as it prohibits the "use or employment of any unfair or deceptive acts of [sic] practice." (*Id.* at ¶¶ 13-17.)  Defendant filed its Notice of Removal in this Court on April 9, 2010. (Court Doc. 1, Def.'s Notice of Removal, 2.)  Defendant then filed its Motion to Change Venue on April 16, 2010. (Court Doc. 4, Def.'s Mot. to Transfer Venue.)  Plaintiffs

filed their brief in response on May 10, 2010. (Court Doc. 13, Pls.' Respon.), and Defendant filed its reply brief on May 17, 2010. (Court Doc. 14, Def.'s Reply Br.)

## III.    ANALYSIS

Before the Court undertakes its two-part analysis of the instant motion, it must make two preliminary observations, one about the content of the forum selection clause and another about the form of the instant motion.

At the outset, the Court notes that the forum selection clause at issue here – "If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of STARK County, State of Ohio" (Court Doc. 4-1, 5.) – provides for venue *solely* in the state courts sitting in Stark County, Ohio.  Movant makes the conclusory statement that "the courts of Stark County, Ohio [include] the Northern District of Ohio" (Court Doc. 4, 1), but even a brief review of the facts applicable to this case and precedent interpreting such language make clear that this clause, if the Court were to find it valid and enforceable as to the claims asserted in this lawsuit, would provide for venue only in those Ohio state courts sitting in Stark County, Ohio.

First, any federal court that did sit in Stark County would not be one of "the courts **of** STARK County, State of Ohio." (emphasis added)  Although the Sixth Circuit has not addressed the issue of whether venue in federal court would be proper where the relevant clause specifies venue and jurisdiction in a particular county, those courts that have addressed the issue have found that a clause that specifies "the courts of" a state to exclude the federal courts of that state, holding that:

> [T]he clause's use of the preposition "of"-rather than "in"-is determinative. Black's Law Dictionary defines "of" as a term "denoting that from which

anything proceeds; indicating origin, source, descent, and the like...." Thus, courts "of" Virginia refers to courts proceeding from, with their origin in, Virginia-i.e., the state courts of Virginia. Federal district courts, in contrast, proceed from, and find their origin in, the federal government.

*Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 (9th Cir. 2009) (citations and footnotes omitted).

*Cf. Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) (holding a forum selection clause that laid venue "in courts in the State of Ohio" was not limited to Ohio state courts because "the federal district court for the Northern District of Ohio is unquestionably a court 'in the State of Ohio'").[4]   The *Doe 1* court found further support for their interpretation because all the other federal courts of appeals that had addressed this issue had also found that "courts of" refers to state courts. *Id.* (citing A*m. Soda, LLP v. U.S. Filter Wastewater Group, Inc.*, 428 F.3d 921, 926 (10th Cir. 2005) (clause "refers to sovereignty rather than geography"); *Dixon v. TSE Int'l Inc.*, 330 F.3d 396, 398 (5th Cir. 2003) ("[f]ederal district courts may be in Texas, but they are not of Texas"); *LFC Lessors, Inc. v. Pac. Sewer Maint. Corp.*, 739 F.2d 4, 7 (1st Cir.1984) ( "the word 'of' as it appears in the phrase in question must have been intended to restrict the meaning of both 'law' and 'courts' to those that trace their origin to the state.")).

Though there are decisions finding either federal or state courts appropriate where a clause specifies a particular county or area, those decisions tend to involve clauses written more broadly than the one at issue here. *See, e.g.*, *Yakin v. Tyler Hill Corp.*, 566 F.3d 72, 76 (2d Cir. 2009) (holding, where the forum selection clause at issue specified "It

---

[4]   *See also*, 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3803.1 (3d ed. 2010) (" the Tenth Circuit, among other federal courts, has stated that because for federal courts venue is stated in terms of 'judicial districts,' the use of the terminology of a specific county indicates that venue was intended to lie only in state courts.")

is agreed that the venue and place of trial of any dispute that may arise out of this Agreement ... shall be in Nassau County, New York," that federal jurisdiction would have been acceptable if a federal courthouse were located in the specified venue.)  And even if this Court were to ignore this language of sovereignty in the clause, the Court cannot ignore the fact that there is no federal court sitting in Stark County, Ohio.  The Court takes judicial notice of the fact that the district courts of the Northern District of Ohio sit in Akron, Cleveland, Youngstown, and Toledo, which are located in Summit County, Cuyahoga County, Mahoning County, and Lucas County, respectively.  Therefore, the forum selection clause at issue in this case, if the Court were to find it otherwise valid and applicable to these claims,[5] specifies venue solely in Ohio state courts sitting in Stark County.

Defendant's erroneous interpretation of its own forum selection clause is even more problematic in light of the form by which it attempted to "enforce" it, that is,  by moving for transfer pursuant to 28 U.S.C. §1404(a).  Though the Sixth Circuit itself has not addressed

---

[5]  The Court has no need to rule directly on whether the forum selection clause at issue is both valid and applicable to the claims alleged in this case, but the Court does note that clause raises other issues which bring its enforceability into question.  For instance, whereas the county-specific language is very narrowly written, the language of the condition precedent "[i]f there is a lawsuit" is so overbroad as nearly to be unenforceable.  The only way to give it any meaning or application to these circumstances would be to read into it the restrictive phrase "this Agreement," in line with its section heading and the language in nearby contractual provisions that restrict the provisions in the contract to that agreement alone.  The generally restrictive nature of the repeated references solely to "this Agreement" in this contract is in contrast to broader phrases routinely used in forum selection clauses, such as "any dispute that may arise out of this agreement" or "relationship between the parties."

In addition, the clause contains a second condition precedent, "upon Lender's request," and it is unclear as yet whether that request has been made.  Defendant refers to such a request only once, where, in its memorandum supporting its motion to transfer venue [Court Doc. 5], it says "Plaintiffs, however, have refused to abide by the forum selection clauses and, through counsel, refused FirstMerit's written request to transfer this lawsuit against FirstMerit pursuant to their agreements."  Because the substance of that request was not related to the Court, it does not know the form that request took, but the clause is very specific that such a request must be one "to submit to the jurisdiction of the courts of STARK County, State of Ohio."  Because Defendant seems to believe the instant motion to transfer fulfills that request condition, and because, as the Court has explained, it does not, whether a valid request triggering the enforcement of this clause has even been made is still in question.

the issue directly, courts within this Circuit that have addressed this issue have found that where a valid forum selection clause specifies venue exclusively in a non-federal forum, transfer pursuant to §1404(a) transfer is wholly unavailable as the court's only option is either dismissal (so that the claims may be refiled in the appropriate non-federal forum) or remand (where the case was originally removed from the appropriate state forum).  *See, e.g., Langley*, 546 F.3d at 371, n.2 (Moore, J., concurring) (noting "[o]f course, if transfer is not possible because a valid forum-selection clause mandates venue in state court or a foreign jurisdiction, § 1404(a) does not apply."); *May v. Ticketmaster Entm't, LLC*, No. 3:10-cv-00760, 2010 WL 4024257, at *3 (M.D. Tenn. Oct. 13, 2010) (in a case where the movant had requested either dismissal or, in the alternative, transfer, finding "transfer under 28 U.S.C. § 1404 is not an option here" because "[t]he forum selection clause at issue specifies Delaware state court as the exclusive forum," and thus "a motion to dismiss is the proper vehicle for enforcing the forum selection clause.") (citations omitted).; *Travelers Prop. Cas. Co. of Am. v. Centimark, Corp.*, No. 2:04-CV-0916, 2005 WL 1038842, at *6 (S.D. Ohio May 3, 2005) (finding "under § 1404(a), this Court has no authority to transfer the case to a non-federal forum. In such a situation, some courts have held that a district court should dismiss the action so that it may be filed in the proper state court") (citations omitted).

Defendant's decision to seek enforcement by moving for transfer pursuant to 28 U.S.C. §1404(a) *only* and not by moving to dismiss, either for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1), for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), or for *forum non conveniens* this way

is critical, not only because a dismissal would have a vastly different effect on the instant action than a transfer would but also, and more relevant to the current analysis, because that choice has a significant effect on the factors this Court can consider in reaching its decision and generally on how this Court would analyze and apply any forum selection clause. *See*, *Kerobo*, 285 F.3d at 535-36; *Langley v. Prudential Mortg. Capital Co., LLC*, 546 F.3d 365, 368 (6th Cir. 2008) (per curiam) (observing "whether [a party] seeks transfer as opposed to dismissal may affect whether factors beyond the intent of the contracting parties may be taken into account by the district court").

As the Sixth Circuit made clear in *Kerobo*, forum selection clauses are analyzed differently, and different presumptions attach to them, where a party seeks to apply them in the context of a motion to transfer venue, as opposed to enforcing them via a motion to dismiss.  In *Stewart*, the Supreme Court made clear that, in the context of a §1404(a) motion to transfer venue, the relevant analysis was not "whether the forum selection clause in this case is unenforceable under the standards set forth in *The Bremen*," where the Court analyzed the enforceability of a forum selection clause asserted in a motion to dismiss for *forum non conveniens*, but rather "whether § 1404(a) itself controls respondent's request to give effect to the parties' contractual choice of venue and transfer this case." 487 U.S. at 29 (internal citations and quotation marks omitted).  The Sixth Circuit took note of this language and adopted its reasoning in *Kerobo*, where that court held the analysis laid out in the *M/S Bremen* line of cases is applicable when enforcing forum selection clauses as a matter of contract and that a different analysis applies when

assessing venue.[6]  285 F.3d at 535 ("We think that this fact argues persuasively for the view that whether a forum-selection clause should be enforced is a matter of contract, not an issue of proper venue. Further, we note that [the language] in *M/S Bremen* . . . is language, not of venue, but of jurisdiction and contract interpretation.") In addition, that court noted that this distinction was in keeping with the Sixth Circuit's previous decisions in *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369 (6th Cir.1999) and *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227 (6th Cir.1995), because those cases did not deal with the question presented in *Kerobo* directly, in part because each of those cases dealt with motions to dismiss pursuant to Fed. R. Civ. P. 12(b) rather than motions to transfer venue. *Id.* at 535-36.

Because enforcing the terms of the clause at issue in this case would require dismissal of the case so that it could be filed *only* in the Ohio state courts located in Stark County, Ohio, and because Defendant asked for transfer to a federal venue unavailable under the terms of this agreement, it is not clear to the Court that Defendant has yet validly sought to enforce the terms of the forum selection clause.  In fact, as explained previously, it is not even clear that the conditions precedent to this clause's enforcement have been validly met in this case.  28 U.S.C. §1404(a) is a *discretionary* provision providing for transfer "in the interests of justice," interests that run counter to the draconian step of dismissal where neither party has asserted the present forum is so improper that the

_____

[6] The majority of the cases Defendant cites regarding the analysis of forum selection clauses actually deal with the analysis to be applied to forum selection clauses when seeking to enforce them specifically as contractual provisions via a motion to dismiss, rather than their application in §1404(a)'s discretionary transfer of venue context.

instant action must be dismissed so it may be brought in the proper forum.[7]  Therefore, this Court will not analyze the forum selection clause as a contractual term Defendant would be seeking to enforce, including any determination as to the validity of the forum selection clause, but rather will consider the existence and form of that language in the contract in the overall balance of the §1404(a) analysis.[8]

As noted above, transfer of venue under 28 U.S.C. § 1404(a) involves a two-part analysis.  First, the Court must assess whether movant has selected "any other district or division where it might have been brought." 28 U.S.C. § 1404(a) Next, the Court must consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Exp., Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991).  Both parties agree that  the lawsuit could have been filed in the Northern District of Ohio; thus, only the second part of the analysis – the convenience of the parties and the interests of justice – is at issue. (*See*, Court Doc. 5, Def.'s Mem. in Supp. of Mot. to Transfer Venue, 5; Court Doc. 13, Pls.' Respon. to Def.'s Mot., 6.)

---

[7]  The Court is aware that it would be within its discretion to dismiss the present action *sua sponte* for *forum non conveniens*, as the Sixth Circuit held in the similar case of *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 830 (6th Cir. 2009).  The Court notes that the party seeking enforcement of the forum selection clause in *Wong* did so only by motions to dismiss, rather than by a motion to transfer venue, and the Court finds that *sua sponte* dismissal would be inappropriate in this case. *See also*, *Centimark Corp.*, 2005 WL 1038842, at *6 (finding that, where a party had solely requested a transfer pursuant to §1404(a), dismissal "would be contrary to the interests of justice.")

[8]  Although Plaintiffs assert "it is not necessary to go through [the §1404(a) analysis] since the Plaintiffs submit that the forum selection clause does not apply to the contentions raised in the instant lawsuit" (Court Doc. 13, Pls.' Respon. to Mot. to Transfer Venue, 3), a forum selection clause is not a prerequisite to motion to transfer venue pursuant to §1404(a); its presence is merely an additional consideration in the overall §1404(a) analysis.

Unsurprisingly, the parties disagree on whether the balance of these factors in the second part of the analysis weighs for or against transfer. Importantly, though, their disagreement is based, in part, on their differing assessments of the nature and scope of the claims alleged in Plaintiffs' Complaint. Defendant contends that the "crux of the lawsuit is that FirstMerit allegedly misrepresented that it would **renew the Agreements** or enter into new agreements on the same terms and conditions as the Agreements," and that "but for the Agreements, Plaintiffs would have no lawsuit against FirstMerit." (Court Doc. 5, Mem. in Supp. of Def.'s Mot. to Transfer, 6.) Plaintiffs respond that "the causes of action alleged in the Complaint do not relate in any way to the enforcement or non-applicability of the prior loan agreements, but rather relate to new and distinct facts and contentions." (Court Doc. 13, Pls.' Respon.)

Defendant is correct that Plaintiffs' original Complaint heavily emphasized the prior course of dealing and relationship between the parties and that the subject of the negotiations was amending the Agreements on substantially the same terms. (Court Doc. 4-1, Compl.) In addition, the Complaint is imprecise in linking the precise behavior alleged to the particular law or duty it violated and to the financial consequences Plaintiffs suffered as a result, and at least some of causes of action that Plaintiffs assert, as originally pled, would seem to arise only from the Agreements, such as the "duty to deal with the Plaintiffs honestly and in good faith." (Court Doc. 4-1, Compl., ¶ 16.) But, Plaintiffs are certainly correct that the Complaint contains clear allegations, most obviously in paragraph 14 with its allegations of "promissory fraud," of wrongful actions that occurred in, and harms that

arose in, Tennessee after the execution of and separate from the agreements.[9]

Under that theory of loss, as alleged in the Complaint, (1) Defendant promised Plaintiffs it would renew the terms of the loans or enter into new Agreements on substantially the same terms as the earlier loans and reduce that agreement to writing; (2) Plaintiffs forbore any further action as to those loans and discontinued discussions with another bank, Cornerstone Bank in Chattanooga, Tennessee, about obtaining alternative financing in reliance on that promise; (3) such reliance was reasonable, given the history of the parties and the amendments to the agreements at issue; and (4) Plaintiffs' reliance was to their detriment, as the promised events – a new contract in writing on the same terms – did not occur, the financing Defendant offered was much more expensive, and the terms of the financing Plaintiffs eventually accepted from Cornerstone Bank were much less advantageous than Cornerstone had offered before Plaintiffs discontinued discussions with them. (*Id.*, ¶¶ 8-14.)

In this case, although Defendant allegedly made the promises over the phone from Ohio, Plaintiffs heard those promises in Tennessee, acted to their own detriment in Tennessee by discontinuing discussions with a bank in Tennessee, received written notification of Defendant's intent to repudiate in Tennessee, and then incurred monetary damages by entering into a contract with more expensive terms in Tennessee with a Tennessee bank.

Therefore, to the extent that Plaintiffs' claims relate either to harm arising from the

---

[9] "[P]romissory estoppel is clearly recognized in Tennessee," and is defined as: "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee . . . and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Sparton Tech., Inc. v. Util-Link, LLC*, 248 F. App'x 684, 689 (6th Cir. 2007) (internal quotation marks omitted) (citing *Amacher v. Brown-Forman Corp.*, 826 S.W.2d 480, 482 (Tenn. Ct. App.1991)).

enforcement of the loan agreements, including any harm caused when the loans went into default, or to duties to Plaintiffs deriving from those agreements, Defendant is likely correct that those claims are related to and governed by the terms of the agreements, including the forum selection clause. But, to the extent the Plaintiffs' harms are related to their reasonable reliance on Defendant's allegedly fraudulent and misleading promises to enter into a new contract or amend the current agreements (or Defendant's representation that those new agreements had already been executed), those claims relate to separate actions that occurred in Tennessee and are unrelated to the agreements.

With the scope of the claims in the Complaint being thus somewhat clarified, the Court now considers the convenience of the parties and potential witnesses and the interests of justice, as required by §1404(a). In doing so, the Court considers several "case-specific factors" including:

> (1) convenience of witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Inghram v. Universal Indus. Gases, Inc.*, No. 1:05-cv-19, 2006 WL 306650, at *5 (E.D. Tenn., Feb. 8, 2006).

The first two factors, the convenience of witnesses and availability of judicial process to compel their attendance, weigh heavily in favor of denying the motion to transfer. Defendant is correct that Plaintiffs' behavior before the alleged discussion related

to renegotiating the loans belies their assertion that Ohio is an inconvenient forum. Plaintiffs bought land located in Ohio for the purpose of operating a business in Ohio and traveled to Ohio on multiple occasions to negotiate and sign the loan agreements. (Court Doc. 5, Def.'s Mem. in Supp. of Mot. to Transfer Venue, 3-5, 8, 10; Court Doc. 14, Def.'s Reply Br. , 4.) Further, though the parties dispute whether and how the agreements were negotiated, the forum selection clause not only serves as evidence that Plaintiffs were on notice that they could be subject to litigation in Ohio and at risk of assuming the attendant costs, but also cuts against the eighth factor, the deference and weight accorded to Plaintiffs' choice of forum.

Plaintiffs contend, though, that they have been "economically devastated" by Defendant's actions and thus that transferring this action to the Northern District of Ohio would be "unfair, unreasonable and unjust" as it would "have the practical effect of denying Plaintiffs their day in Court." (Court Doc. 13, Pls.' Respon., 5.) They also reiterate that, even if the forum selection clause did apply to the agreements, it does not apply to the actions alleged in the Complaint, and thus that any evidence the forum selection clause provides in support of Ohio as a place of litigation does not apply to this action. In addition, because Plaintiffs' complaint is premised upon facts involving not only those actions related to the agreements executed in Ohio, but also actions Plaintiffs took or forbore in Tennessee, it necessarily requires proof related to Plaintiffs' actions in Tennessee. It is clear that, as such a significant portion of the Complaint relies on evidence relating to their negotiations with Cornerstone Bank, testimony of witnesses from Cornerstone Bank and documents in the custody of Cornerstone Bank will be central to the claims to be proven.

Although Plaintiffs did not discuss the convenience of Cornerstone Bank as non-

party witnesses specifically, Plaintiffs did, in the context of differentiating at length between the agreements and the actions occurring after the execution of the agreement, contend that they would have to "pay considerable expenses in having witnesses transported to Ohio." (Court Doc. 13, Pls.' Respon., 6.) "Convenience of non-party witnesses, as opposed to employee witnesses, is one of the most important factors in the transfer analysis . . . [and includes] a consideration of the importance of each witness and includes both non-party witnesses outside the scope of the Court's subpoena power and the geographic location of any witnesses likely to testify in the case." *Stewart v. Am. Eagle Airlines, Inc.*, No. 3:10-0049, 2010 WL 4537039, at \*2 (M.D. Tenn. Nov. 3, 2010) (internal citations and quotation marks omitted). *See also*, *Smith v. Kyphon, Inc.*, 578 F. Supp. 2d 954, 963 (M.D. Tenn. 2008) ("Convenience of non-party witnesses . . . is one of the most important factors in the transfer analysis.") In this case, though the exact contours of the convenience of Cornerstone Bank and its employees and the availability of judicial process to compel their appearance and cooperation is unclear, this Court – sitting as it does in Chattanooga, where the negotiations with Cornerstone took place – is much more likely to be both more convenient and more likely to be able to exercise judicial power over Cornerstone Bank and its employees than a court in the Northern District of Ohio. Therefore, although the first two factors are fairly balanced between the parties as applied to the parties alone, the consideration given to the convenience of non-party witnesses weighs very heavily against transfer, and thus the first two factors weigh against transfer.

Similar considerations, as they relate to the other factors, are either balanced equally in considering the motion to transfer. The third, sixth, and seventh factors – the location of the relevant documents, the locus of the operative facts and events that gave

rise to the dispute, and the familiarity of the forum with the governing law – relate equally to the Northern District of Ohio and the Eastern District of Tennessee, as claims premised upon the agreements weigh in favor of the former venue and as claims related to Defendant's post-agreements behavior and the negotiations with Cornerstone Bank weigh in favor of the latter venue.

The fourth, fifth, and eighth factors – residence and convenience of the parties; relative financial means of the parties, and the deference and weight accorded to the plaintiff's choice of forum – weigh slightly in favor of denying the motion to transfer. Although Defendant is correct, as noted above, that the forum selection clause's presence in the contract somewhat undermines Plaintiffs' arguments related Plaintiffs' convenience and choice of forum, Plaintiffs are correct that the effect of the forum selection clause on this balancing test relates in large part to those claims based on the agreements and not to claims based on Defendant's behavior after the agreements were executed. Further, Defendant's and Plaintiffs' residences – in Ohio and Tennessee respectively – offset each other, but Plaintiffs contend that the costs of litigating in Ohio would effectively cause them to be unable to prosecute their case and that such a result is a consequence of Defendant's actions. Defendant does not rebut this and does not argue that it would suffer a similar level of hardship if the action continues to be heard in Tennessee. Therefore, these factors weigh slightly in favor of denying the motion to transfer.

Finally, the ninth factor – trial efficiency – militates in favor of keeping these claims together. As the other factors weigh in favor of keeping the action in Tennessee, this means keeping the claims together in Tennessee.

Therefore, all of the facts and circumstances as presented by the parties weigh in

favor of denying the motion to transfer venue.

## IV.     CONCLUSION

As set forth above, because Defendant moved only for a transfer of venue pursuant to §1404(a), and because this Court finds that the factors relevant to that analysis do not militate in favor of transferring venue to the Northern District of Ohio, Defendant's Motion to Transfer Venue [Court Doc. 4] is **DENIED**.


**SO ORDERED** this 15th day of December, 2010.


                                        _/s/Harry S. Mattice, Jr._
                                        HARRY S. MATTICE, JR.
                                        UNITED STATES DISTRICT JUDGE